Charles **GERACE** and Tamarra Gerace, **Individually and as Parents and Next Friends of Angela Gerace and Charles Gerace, Jr., Minors, Plaintiffs–Appellants,**

v.

**3–D MFG. CO., INC., William Nissen and John McHugh, Defendants–Appellees.**

No. 93–0154.

Court of Appeals of Iowa.

June 28, 1994.

314

Robert R. Rush, Matthew J. Nagle, and Jana L. Happel of Lynch, Dallas, Smith & Harman, P.C., Cedar Rapids, for appellant.

Roger A. Lathrop, Vicki L. Seeck, and Jean Z. Dickson of Betty, Neuman & McMahon, Davenport, for appellee 3–D Mfg. Co.

John M. Bickel and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellees Nissen and McHugh.

Heard by SACKETT, P.J., HABHAB, J., and SCHLEGEL, S.J.*

HABHAB, Judge.

Apache Hose and Belting Inc. is a supplier of hose and belting with processing and distribution centers in Cedar Rapids, Kansas City, and St. Louis. Charles Gerace was employed as a belt splicer at the Cedar Rapids center.

In 1988, Apache started to order larger rolls of belting from suppliers. These larger rolls could not be moved with the fork lifts Apache owned. The president of the corporation, William Nissen, and the fabrication manager, John McHugh, worked on developing a belt mover. They contacted Dennis Best, operator of 3–D Manufacturing Co., Inc., about designing and constructing the belt mover.

The first design lifted from the core of the belt and was unstable. Best expressed con-

* Senior judge from the Iowa Court of Appeals serving by order of the Iowa Supreme Court.

cerns about the safety of the design. The core-lift design was rejected. Best submitted an alternative bottom-lift design that had no handle and would not require a worker to be in front of the moving roll. Nissen allegedly rejected this design and instructed 3–D to build a bottom-lift design with a steering handle in front of the moving roll.

3–D followed these instructions and delivered a bottom-lift mover to each of the three production centers. These movers were used frequently over a period of time at all three plants without injury.

On May 24, 1989, Gerace was injured after he slipped and fell while operating the handle in the front of the bottom-lift mover and the driver did not see Gerace had fallen. Apache Hose paid Gerace workers' compensation benefits.

Gerace and his family filed suit against 3–D seeking damages under strict liability, express warranty, and negligence theories. They subsequently amended their petition to add allegations of gross negligence against coemployees Nissen and McHugh.

The jury returned a defendant's verdict for 3–D. The jury found Nissen and McHugh were liable and allocated sixty percent of the fault to Nissen and forty percent to McHugh. Charles Gerace was awarded $236,822 in damages and his children were each awarded $1200 for loss of consortium.

Plaintiffs filed a conditional motion for new trial and Nissen and McHugh filed combined motions for J.N.O.V. and new trial. The district court denied the motions for new trial but granted Nissen and McHugh J.N.O.V. The court found gross negligence had not been established for three reasons: (1) there was no showing the defendants had actual knowledge of the danger because there was no showing the defendants knew of the bad terrain or debris which caused Gerace to fall; (2) there was no showing defendants knew there was a high probability of injury in operating the belt mover; and (3) there was insufficient evidence to establish a conscious failure on the part of either defendant to avoid Gerace's injury.

Plaintiffs appeal. We affirm the district court.

## I. The Grant of Judgment Notwithstanding the Verdict.

Geraces first assert the district court erred in granting Nissen's and McHugh's motion for J.N.O.V. We disagree. We review the grant or denial of J.N.O.V. for correction of errors of law. Iowa R.App.P. 4. We view the evidence in the light most favorable to the party against whom the motion was made, taking every legitimate inference which may fairly and reasonably be made. *Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 684 (Iowa 1990); *see* Iowa R.App.P. 14(f)(2), (3). If each element of the claim is supported by substantial evidence, the motion should be denied. *Smithway,* 464 N.W.2d at 684. The standard is whether there is sufficient evidence to justify submitting the question to the jury. *Slocum v. Hammond,* 346 N.W.2d 485, 493 (Iowa 1984).

Iowa's statutory scheme for workers' compensation is an injured worker's exclusive remedy against an employer or coemployee. Iowa Code § 85.20 (1991). The only exception relates to a coemployee's "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." *Id.*

As interpreted by our courts, it is very difficult to prove a case of gross negligence under section 85.20(2). *Swanson v. McGraw,* 447 N.W.2d 541, 543 (Iowa 1989); *Woodruff Const. Co. v. Mains,* 406 N.W.2d 787, 790 (Iowa 1987). Our supreme court has stringently held an injured worker must prove all of the elements cited in *Thompson v. Bohlken,* 312 N.W.2d 501 (Iowa 1981), to establish a coworker's gross negligence. *Walker v. Mlakar,* 489 N.W.2d 401, 403 (Iowa 1992). *Thompson* requires proof of (1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to possible, result of the danger; and (3) a conscious failure to avoid the peril. *Id.* at 505. The type of conduct egregious enough to be "wanton" was defined in *Thompson:*

> [W]anton conduct lies somewhere between the mere unreasonable risk of harm in ordinary negligence and intent to harm.... The usual meaning assigned to "willful," "wanton," or "reckless," accord-

ing to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to or so obvious that he must be taken to be aware of it, and so great as to make it highly *probable* that harm would follow.

312 N.W.2d at 504–05 (quoting William L. Prosser, *Handbook of the Law of Torts* § 34, at 185 (4th ed. 1971)) (emphasis in original).

In this case, appellant slipped on sand as he attempted to steer the belt mover up an incline from the storage yard into the building. Transporting belts from storage into the plant had been done repeatedly with this belt mover without incident. There is no evidence appellees knew of any danger along the route from the storage yard to the plant.

Appellants argue the proper focus of inquiry should have been on the claimed inherent danger in the design of the belt mover. The belt mover purchased by Apache was the third design developed by 3–D. The first lifted the roll of material from the core, had a steering handle on the front, and was unstable. The second lifted the material from the bottom and had no steering handle. The design ultimately built and used lifted from the bottom and had a steering handle on the front. Although Best stated he had some concern about the lack of visibility in the first design, the concern he voiced does not rise to the level necessary to make appellees' actions in buying and using the belt mover gross negligence instead of negligence. We recognize appellees knew there was a possibility of accidental injury. Their experience with the use of the device, however, would have served to confirm their decision the belt mover was safe to use. Appellees did not have knowledge injury was a probable, not just possible, result of the purchase and use of the belt mover.

Viewing the evidence in the light most favorable to appellants, we conclude there was not substantial evidence at trial to support submitting the issue of gross negligence to the jury. Since, therefore, a directed verdict would have been appropriate, the trial court did not err in granting appellees' motion for J.N.O.V.

## II. The Exclusion of Evidence of OSHA Violations.

Appellants sought to introduce testimony concerning violations of OSHA regulations by 3–D, the manufacturer of the belt mover, and by Nissen and McHugh, co-employees of Gerace. Several cases by the Iowa Supreme Court set forth principles relevant to our inquiry.

In *Koll v. Manatt's Transportation Co.*, 253 N.W.2d 265, 269 (Iowa 1977) (a wrongful death case) the plaintiff's decedent, who was not an employee of Manatt's Transportation Co., sought to recover from that company death benefits caused by alleged violations of OSHA standards. Prior to *Koll*, the supreme court had not considered the effect on nonemployees of OSHA or IOSHA standards.

In resolving the issue before it, our supreme court first observed that a violation of an OSHA or IOSHA standard did not directly give rise to a cause of action for the plaintiff, for the decedent was not an employee of Manatt's Transportation Co. *Id.* at 269. It followed that such violation as to a nonemployee would not be negligence per se. *Id.* at 269–70.

Yet to be answered, however, was the question whether the violation of the standards could be used, as to nonemployees, as evidence of defendant's negligence. Concerning that issue, the supreme court held "even though the injury complained of is not within the purview of the statute, the disregard of statutory duty may be a material fact, and evidence of negligence." *Id.* at 270. The court continued by saying, "we hold violation by an employer of an OSHA or IOSHA standard is negligence per se as to his employees. Such a violation is evidence of negligence as to all persons who are likely to be exposed to injury as a result of the violation." *Id.* The court then determined that plaintiff's decedent, though not an employee, was exposed to injury from the alleged violation of OSHA standards. *Id.* Thus, the court ruled a violation of OSHA standards could be used as evidence of negli-

gence on the part of Manatt's Transportation Co.[1] *Id.*

In *Eister v. Hahn*, 420 N.W.2d 443, 444 (Iowa 1988) (a gross negligence suit) a farm worker sued a fellow employee charging gross negligence under Iowa Code section 85.20. OSHA violations were at issue. *Id.* at 445. The trial court excluded the evidence of OSHA violations because it determined *Koll* did not apply to suits between coemployees. *Id.*

Our supreme court first reaffirmed its position that a violation of an OSHA standard is negligence per se in an action by an employee against an employer. *Id.*

However, the supreme court in affirming,[2] states:

Clearly not every violation of an OSHA regulation amounts to gross negligence. A person can violate an OSHA regulation without consciously doing so. We should not add a second exception to section 85.20 which the legislature did not provide.

The trial court correctly concluded that our holding in *Koll* does not apply to claims brought against a coemployee.

*Id.*

The case of *Wiersgalla v. Garrett*, 486 N.W.2d 290 (Iowa 1992) (an action outside the gross negligence provisions of chapter 85), casts additional light on the subject. The salient facts in *Wiersgalla* are that Goodwin, Leagjeld, and plaintiff Wiersgalla were the general partners of Rose City Canopy. *Id.* at 291. Rose City Canopy was hired to erect a metal canopy over certain gas pumps. *Id.* The partnership hired de-

fendant Garrett to do the crane work. *Id.* During the construction of the canopy, plaintiff and his partner Leagjeld received an electrical shock when defendant Garrett's crane (operated by defendant Garrett) apparently came into contact with overhead power lines. *Id.* Wiersgalla sustained injuries. *Id.* He sued Garrett and his partner Goodwin and other defendants. *Id.* Goodwin settled. *Id.* The case proceeded against Defendant Garrett. *Id.* Wiersgalla claimed violation of OSHA standards. *Id.* The trial court instructed the jury a violation by a coemployee constituted negligence per se. *Id.*

Our supreme court first determined that the relationship between the plaintiff Wiersgalla and the defendant Garrett and Goodwin was one of coworkers. *Id.* at 293. In reversing and remanding for a new trial, the supreme court after citing *Koll* and *Eister* states: "[u]nder the facts here, a violation of an OSHA standard by Terry [Wiersgalla] or any of the defendants would be merely evidence of negligence, and would not rise to the level of negligence per se." *Id.* The court reached this result after determining this was not and could not be as between Goodwin and Wiersgalla, a suit between an employee and an employer. *Id.* In the footnote to that statement, the court added, "[a]ccordingly, the district court's jury instruction on remand should treat [the coemployees] the same and recite that any alleged violation of an OSHA standard by either of them is evidence of negligence."[3] *Id.* at 294 n. 1.

---

1. The court, however, affirmed the exclusion because there was no competent evidence the OSHA or IOSHA standards were violated and hence there was not a proper foundation for admission of the standards. *Koll*, 253 N.W.2d at 270.

2. See dissent in *Walker v. Malakar*, 489 N.W.2d 401 (Iowa 1992), where it states:
   *Eister* is clear support for the proposition that a coemployee's violation of an OSHA regulation is not negligence per se as to the injured worker's coemployee. The question, however, was not presented in *Eister* as to whether the violation could be used as evidence of gross negligence on the part of the coemployee.
   In *Johnson* [*v. Interstate Power Co.*, 481 N.W.2d 310 (Iowa 1992)], we stated our long-

standing corollary to the negligence per se rule that "a violation [of OSHA regulations] is *evidence* of negligence 'as to all persons who are likely to be exposed to injury as a result of the violation.'" This is the position argued by Walker today, one which is different from the one decided in *Eister*.
   *Walker*, 489 N.W.2d at 410 (citations omitted) (emphasis in the original).

3. We believe this statement by the court suggests that in an action outside of Iowa Code Chapter 85 evidence of violation of OSHA standards is admissible against a coemployee as evidence of negligence. *Cf. Eister*, 420 N.W.2d at 445. (rejecting using violations of OSHA standards as a second exception to section 85.20).

Finally, in *Walker v. Mlakar*, 489 N.W.2d 401, 402–03 (Iowa 1992), the estate of a deceased worker sued coemployees under the exception to Iowa Code section 85.20 claiming violation of OSHA standards. The court required actual knowledge of the danger and conscious failure to protect the coworker. *Id.* at 403. In its review of the district court's exclusion of evidence of OSHA standards, the supreme court affirmed the exclusion, agreeing there was no evidence defendants had actual knowledge of the danger or consciously failed to remedy it. *Id.* at 407. The court then cited the language from *Eister* which states not every violation of OSHA regulations amounts to gross negligence. *Id.* In its parenthetical descriptions of *Eister* and *Wiersgalla* the court described *Eister* as holding OSHA standards are not applicable in an action against coemployees under section 85.20 and *Wiersgalla* as holding OSHA standards are admissible in coworker litigation outside of section 85.20. *Id.* The supreme court held the OSHA regulation to be irrelevant in *Walker* and properly excluded. *Id.* Thus the supreme court states OSHA standards are not admissible in coemployee suits under section 85.20 and affirms the exclusion of OSHA standards because defendants had no actual knowledge of the danger. *Id.*

### A. Evidence of 3–D's violation of OSHA regulations.

■ Appellant proceeded against 3–D Manufacturing under claims of negligence, strict liability, and breach of warranty. The jury found 3–D was not at fault under each claim. Concerning the negligence claim, Gerace argues the district court erred in excluding expert testimony concerning alleged violations of OSHA standards by 3–D.

None of the Iowa cases cited to us in the briefs directly address the admissibility of a manufacturer's violation of OSHA standards. *Koll* and *Wiersgalla* both involved suits against nonemployers and sought to introduce OSHA violations as evidence of negligent acts by the defendants. In this case, appellant sought to introduce evidence of OSHA violations not in the operation of the belt mover, but in its manufacture. The

Sixth Circuit Court of Appeals discussed a similar situation:

> The Occupational Safety and Health Act, which provides the legislative grant of authority to OSHA, specifically states that it is not intended to affect the civil standard of liability. The Act states:
>
> > Nothing in this chapter shall be construed to supercede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties or liabilities of employers and employees under any law with respect to injuries, diseases or death of employees arising out of, or in the course of employment.
>
> 29 U.S.C. § 653(b)(4).
>
> OSHA regulations are not relevant to the issue of U.S. Industries' liability to the Minichellos for a further reason. OSHA regulations pertain only to employers' conduct. See 29 U.S.C. § 654; *McKinnon v. Skil Corp.*, 638 F.2d 270, 275 (1st Cir.1981). U.S. Industries was not Minichello's employer; the Ford Motor Company was. The OSHA regulations, then do not even apply to the relationship between U.S. Industries and Minichello, which was that of producer and consumer. Restatement Second of Torts § 402A comment 1 (1965). Even, then, if the OSHA regulations were intended to affect civil liability—as Congress has made clear they are not—they would not bear upon the relationship between the parties in this case.

*Minichello v. U.S. Industries*, 756 F.2d 26, 29 (6th Cir.1985); *see also McKinnon v. Skil Corp.*, 638 F.2d 270, 275 (1st Cir.1981).

Even if we assumed for the sake of argument the regulations were admissible, Gerace was not prejudiced by their exclusion. He makes no claim the violations of OSHA standards caused the accident. We conclude the trial court did not abuse its discretion in excluding evidence of 3–D's violation of OSHA and IOSHA standards.

The references to the OSHA standards in Gerace's brief, the appendix, and Meehan's deposition are very general. Although specific sections are cited, the content of the regulations is not specified, nor does appel-

lant show how the regulations were violated or how the violations relate to the accident. We are unable to determine from the record before us the relevance of the sections cited to 3–D's manufacture of the belt mover. Therefore, we conclude the district court properly excluded the evidence for lack of proper foundation. *See Koll,* 253 N.W.2d at 271; *McKinnon,* 638 F.2d at 274.

### B. Evidence of OSHA violations by Nissen and McHugh.

■ *Eister* specifically prohibits use of evidence of OSHA violations as evidence of gross negligence in suits against coworkers under section 85.20. *Eister,* 420 N.W.2d at 445. *Wiersgalla* directs the trial court on remand to instruct the jury any alleged violation of OSHA standards is evidence of negligence against a coworker. *Wiersgalla,* 486 N.W.2d at 294 n. 1. *Walker* cites *Eister* with approval, but only excludes evidence of OSHA violations by coworkers because there was no "evidence that either defendant had *actual* knowledge of the [danger] or that they consciously failed to remedy it." *Walker,* 489 N.W.2d at 407 (emphasis in original).

Similarly in this case, there is no evidence defendants had actual knowledge of danger in the route used by appellant. Nor does the record contain evidence the defendants knew the design of the belt mover made injury probable. Indeed, repeated use of such belt movers in Apache's three plants without incident could cause the defendants to believe the belt mover was safe to use. Accordingly, we determine the trial court did not abuse its discretion in excluding evidence of OSHA violations against Nissen and McHugh.

### III. The Exclusion of Evidence of Violation of ANSI Standards.

■ Appellant asserts the district court erred in excluding expert testimony concerning violation of ANSI standards by 3–D, Nissen, and McHugh. We disagree. The district court has discretion in ruling on evidentiary matters. *Ladeburg v. Ray,* 508 N.W.2d 694, 695 (Iowa 1993). On appeal, we reverse for abuse of discretion "only when such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Rowen v. LeMars Mut. Ins. Co.,* 357 N.W.2d 579, 583 (Iowa 1984).

### A. As Evidence Against Nissen and McHugh.

■ At trial, out of the jury's presence, the court and counsel discussed at great length the admissibility of OSHA, ANSI, and industry standards and the custom and practice in the industry. Testimony concerning ANSI and industry standards was excluded as being beyond the scope of discovery.

Gerace responded to an interrogatory by Nissen and McHugh concerning any standards he claimed defendants violated:

25. Do you claim this Defendant failed to properly comply with any published or printed standards, rules, regulations, recommendations, opinions, instructions or warnings and if your answer is in the affirmative, state the title or description and page or section number of such published or printed document, with which it is claimed Defendant failed to comply.

*Answer:* Yes, defendants failed to comply with Iowa Code 88.4, discovery is continuing. In addition, see 3–D Mfg. Co. answers to interrogatories and deposition testimony of Dennis Best, as it relates to warnings.

This response clearly gave the defendants no notice of any claim they violated ANSI or industry standards or regulations. We are not persuaded by appellant's argument OSHA's adoption of the ANSI standards should have been sufficient notice that, if OSHA standards were to be introduced, ANSI standards would be also.

Gerace also responded to an interrogatory concerning witnesses he anticipated calling:

28. List the name, address, telephone number, and employer's name, address and telephone number of each person who you will and/or anticipate calling as a witness to testify at the trial of this case and with regard thereto, set out the substance of the knowledge or information which each such individual has which will be the subject of that individual's testimony.

*Answer:* ... James B. Meehan will testify regarding opinions as to the design and manufacture of the subject hand-truck and the belt-moving system.

This testimony would relate more directly to 3–D as manufacturer, only relating to Nissen and McHugh to the extent they had any part in the design. The OSHA standards cited by Meehan in his deposition related to the training for and use of the equipment. *See* 29 C.F.R. § 1910.178(a), (n), and (*o*) (1992). Neither the interrogatory nor the deposition gave Nissen and McHugh notice of appellant's intent to introduce ANSI or industry standards.

Two rules of civil procedure concerning discovery are relevant to our review of the district court's exclusion of the evidence. Rule 122(d) states the duty regarding supplementation of responses to interrogatories:

(d) Supplementation of Responses. A party who has responded to a request for discovery that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

. . . .

(2) A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which:

(A) The party knows that the response was incorrect when made; or

(B) The party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment;

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

Iowa R.Civ.P. 122(d). Appellant asserts no request for supplementation was made pursuant to part (3) and, since ANSI standards are identical to OSHA standards, there was no concealment of Gerace's theories. *See* Iowa R.Civ.P. 122(d)(2)(B) and (d)(3). We agree Nissen and McHugh made no request

for supplementation. We do not agree, however, the disclosure of OSHA standards in Meehan's deposition was sufficient to inform Nissen and McHugh of Gerace's intent to offer evidence on ANSI standards. On voir dire examination, Meehan indicated he had prior knowledge of the ANSI standards, yet did not mention them in the deposition. We conclude the response to interrogatory 25 either was incorrect when made or became incorrect, thus imposing a duty to supplement the answer pursuant to rule 122(d)(2).

The ANSI standards are beyond the scope of the responses to interrogatories 25 and 28. The deposition by Meehan did not mention or allude to ANSI standards. The purpose of rule 122 "is to avoid surprise and to permit the issues to become both defined and refined before trial." *Hariri v. Morse Rubber Prods. Co.,* 465 N.W.2d 546, 550 (Iowa App.1990) (citing *White v. Citizens Nat'l Bank of Boone,* 262 N.W.2d 812, 816 (Iowa 1978)). "Discovery should expedite the disposition of litigation by educating the parties in advance of trial of the real value of their claims and defenses." *Barks v. White,* 365 N.W.2d 640, 643 (Iowa App.1985). We conclude the district court did not abuse its discretion in excluding testimony concerning ANSI standards relating to Nissen and McHugh.

### B. As Evidence Against 3–D Manufacturing.

During Meehan's deposition 3–D asked, "Do you have any criticism of 3–D Manufacturing in this case?" The response criticized 3–D for building and selling the device after warning Nissen and McHugh it was unsafe because the operator was in front. The following dialogue began a few questions later:

Q. Did they [3–D] have an obligation not to build and sell it? A. I would expect them to refuse to build a device they knew to be dangerous.

Q. Is there any rule or regulation that you can provide me that you base that opinion upon? A. No. Well, as far as rule or regulation, the administrative regulation, OSHA, I would base that upon 1910.-

178(n), subparagraph (2), as well as subparagraph (4).

Further questioning revealed Meehan agreed OSHA only applied to 3–D Manufacturing as to their own employees. The deposition does not reveal any claim of violation of ANSI standards. To admit such testimony at trial would have unfairly surprised 3–D and could have had a prejudicial effect on the jury. We conclude the evidence was properly excluded and affirm the decision of the trial court.

### IV. Evidence of Industry Standards or Custom and Practice.

We have noted the discretion of the trial court to make determinations concerning the admissibility of evidence. Gerace sought to have Meehan testify about industry standards and industry custom and practice. The court and counsel had just completed extensive discussions outside the presence of the jury about the admissibility of OSHA, IOSHA, and ANSI standards. After objection to and discussion of the testimony, the court restricted Meehan's testimony to opinions based on his personal professional experience in the industry. We determine the reasons for excluding testimony about ANSI standards also apply to excluding testimony about industry standards and industry custom and practice. We disturb the discretionary ruling of a trial court "only when such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Rowen v. LeMars Mut. Ins. Co.*, 357 N.W.2d 579, 583 (Iowa 1984). We affirm the decision of the trial court to exclude this testimony.

### V. Alternative Arguments of Nissen and McHugh.

Since the district court entered judgments notwithstanding the verdicts for Nissen and McHugh, it explicitly did not rule on their motion for a new trial. In their brief, Nissen and McHugh raise several arguments in support of their motion for a new trial as an alternative defense should this court reverse the J.N.O.V. Since our decision to affirm the grant of J.N.O.V. is dispositive, we do not address the alternative arguments urged by Nissen and McHugh.

For the reasons stated, the judgment of the district court is affirmed in all respects. We determine any other issues the parties may have raised are either covered by this opinion or are without merit. Costs of this appeal are taxed to appellants.

**AFFIRMED.**